## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
)
HUI LIN, PIN YUN ZHANG, WEN MING LIN,       )
HUANG CHEN, AI YI LIN, and YU JIAO LIN,    )     Case No. 08-Civ-4778
)
                Plaintiffs,    )
)
       -against-         )
)
GREAT ROSE FASHION, INC., SILVER      )
FASHION, INC., GREAT WALL CORP.,     )
PING NEN LIN, XIAO YAN LIN, and FAN ZHEN  )
)
               Defendants.   )
-------------------------------------------------------------------X

**DEFENDANTS' POST-HEARING MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION**

Wong, Wong & Associates P.C.
150 Broadway, Suite 1588
New York, NY 10038
Tel: 212-566-8080
Attorneys for Defendants

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………………………iii, iv

STATUTE AND RULES……………………………………………………………….……..v

PRELIMINARY STATEMNT…………………………………………………………………1

STATEMENT OF FACTS……………………………………………………………….…....1

I.      Defendants were not the employers of Plaintiffs……………………………….………1

        A.      Plaintiffs entered into a subcontracting agreement with Defendants…………….2

II.     Defendants did not retaliate against Silver Fashion in any way, shape or form…………..3

        A.      Silver Fashion closed down due to a legitimate business reason –the poor
                economy…………………………………………………………………………..3

        B.      December 16th and December 18th meetings were inquiry based………………….4

        C.      Silver Fashion closed down permanently as a result of the weakened
                economy……………………………………………………………….…….…..5

ARGUMENT……………………………………………………………………….……….....5

III.    Plaintiffs lack standing to bring this action against defendants……………..……………..8

        A.      Defendants fail to qualify as an "employer" under the FLSA and New York Labor
                Law……………………………………………………………….………………8

        B.      Defendant Great Wall Corp. is not a joint employer of Plaintiffs……………….10

        C.      The individual defendants do not qualify as employers because they did not have
                operation control……………………………………………………………….13

        D.      Plaintiffs were independent contractors who formed a partnership agreement
                amongst themselves………………………………………………………….....15

        E.      The Plaintiffs are independent contractors under the "economic reality
                test"…………………………………………………………………………….17

        F.      The parties have constitutional rights to freely contract freely and their freedom of
                contract must be respected…………………………………………………….19

i

IV.   Plaintiffs have failed to demonstrate a likelihood of success on the merits of their retaliation claim..................................................................................................20

     A.  Defendants have not retaliated against Plaintiffs..........................................20

V.    Plaintiffs failed to demonstrate they are suffering irreparable harm.......................26

VI.   Injunctive relief is not warranted based on plaintiffs' failure to satisfy the standard for same.......................................................................................................................29

CONCLUSION........................................................................................................33

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Pages**

Alvarez v. City of New York, 2 F.Supp.2d 509, 514 (S.D.N.Y.1998)................................27

Bell & Howell v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir.1983)................................26

Boyarsky v. Froccaro, 125 Misc.2d 352, 479 N.Y.S.2d 606 (N.Y.Sup.1984)......................16

Brock v. Superior Care, Inc., 840 F.2d 1054 (2nd Cir. 1988)..........................................17

Brown v. Middaugh, 1998 WL 566791, at 1* (N.D.N.Y. Sept. 3, 1998)...........................26

Cater v. Dutchess Community College, 735 F.2d 8 (2d Cir 1984)................................8,13

Centeno-Bernuy v. Perry, 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003)....................21, 28, 29

Colon v. Coughlin, 58 f.3d 85, 872 (2d Cir. 1995)....................................................21

E.E.O.C. v. Century Broadcasting Corp., 957 F.2d 1446, 1462-63 (7th Cir.1992) ............…..31

Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144 (2d Cir. 1999)..........6

Gidatex, S.R.L. v. Campaniello Imports, Ltd., 13 F.Supp.2d 417, 420 (S.D.N.Y.1998)...........31

Hanlon v. Melfi, 102 Misc.2d 170, 423 N.Y.S.2d 132 (N.Y. Supp. 1979).........................,16

Herman v. RSR Sec. Servs., 172 F.3d 132 (2d Cir 1999)..............................................8

Interborough Rapid Transit Co. v. Lavin, 247 N.Y. 65, 159 N.E. 863 (1928)......................19

Jayaraj v. Scappini, 66 F.3d 36, 38-39 (2d. Cir. 1995)................................................26

JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir.1990)..............................29

Latino Officers Ass'n. v. Safir, 170 F.3d 167, 171 (2d Cir.1999)....................................29

Lopez v. Silverman, 14 F.Supp.2d 405, 411, (S.D.N.Y. 1998)........................................17

Lore v. City of Syracuse, F.Supp.2d, 2001 WL 263051 (N.D.N.Y. 2001).....................27, 28

Manning v. Whalen, 259 A.D. 490, 20 N.Y.S.2d 364 (NY. App. Div. 1940).......................16

iii

Pattison v. Blanchard, 5 N.Y. 186 (1851)……………………………………………………………..16

Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir.1999)…………………………………...26

Sandlin v. Corporate Interiors Inc., 972 F.2d 1212, 1215 (10th Cir.1992)………………….…..32

Simpson v. New York State Dep't of Civil Srvc., 166 Fed.Appx. 499, 502 (2d. Cir.2006)…….22

State of New York v. Nuclear Reg. Comm'n, 550 F .2d 745, 755 (2d Cir.1997)………………..26

Stillwell Theatre v. Kaplan, 235 A.D. 738, 255 N.Y.S. 715 (2d Dep't 1932)…………………...19

Walling v. Rutherford Food Corp., 331 U.S. 722, 67 S.Ct. 147(1947)………………………….12

Wallikas v. Harder, 78 F.Supp.2d 36, 39 (N.D.N.Y.1990)……………………………………….29

Yang v. ACBL Corp., 427 F.Supp.2d 327 (S.D.N.Y. 2005)…………..………………………….8

Zhang v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003)………………………………….11

## Statute and Rules

29 U.S.C. §203(e)(1)…………………………………………………………………..15

N.Y. Lab. Law §651(5)………………………………………………………….…….15

12 NYCRR §142-2.16(a)…………………………………………………………..…...15

N.Y. Partnership Law §10(1)………..……………………………………………...…….16

N.Y. Partnership Law §11(4)………….…………………………………………………16

## PRELIMINARY STATEMENT

SPRING FASHION, INC. (hereinafter "Spring Fashion"), GREAT ROSE

FASHION,INC. (hereinafter "Great Rose"), SILVER FASHION INC. (hereinafter "Silver

Fashion"), and GREAT WALL CORP. (hereinafter "Great Wall") are corporations organized

under the laws of the State of New York. Defendant XIAO YAN LIN (hereinafter "Ms. Lin")

was the manager of GREAT ROSE and SPRING FASHION, INC. (Tr. 218). Defendant PING

NEN LIN (hereinafter "Mr. Lin") is the owner of GREAT WALL. (Tr. 158). Defendant FANG

ZHEN is a quality control person of Great Wall. (Tr. 107, 132, 179).

## STATEMENT OF FACTS

### I.      Defendants were not the employers of Plaintiffs

Spring Fashion operated a factory that manufactured garments. (Tr. 242). Great Rose and

Silver Fashion were Spring Fashion's successors. (Tr. 241). The factory was owned by Ms. Lin's

parents. (Tr. 218). Because Ms. Lin's parents resided in China, Ms. Lin helped manage the

operation of the factory. *Id*. Ms. Lin expended minimal time and effort in managing the factory

because the workers knew how to complete their work and "very, very rarely" would they have

to meet deadlines. (Tr. 243, 247, 254, 255, 263). Mr. Lin was not involved in the operation of the

factory. (Tr. 171). Mr. Lin had never met or communicated with any of the plaintiffs. (Tr. 180).

Great Wall is a garment wholesaler and was a customer of Silver Fashion and its

predecessors. (Tr. 158) Great Wall never had any ownership interest in Silver Fashion or its

predecessors. (Tr. 164). It solicited orders from department stores and worked with many

factories that manufactured garments. *Id*. Silver Fashion was only one of the factories that

manufactured garments for Great Wall. (Tr. 171, 242). Only a very small portion of Great Wall's

business, approximately three to four percent, was attributed to Silver Fashion. (Tr. 172). Great

1

Wall, at all relevant times, is engaged in wholesale trade of garments and never owned any

manufacturing equipment. (Tr. 158). Great Wall and Silver Fashion were in the same building,

each taking separate space. (Tr. 158, 163, 178). Silver Fashion rented space from Great Wall

pursuant to a lease. (Tr. 158, 159).

## A. Plaintiffs entered into a subcontracting agreement with Defendants

In December 2005, Spring Fashion formed an oral agreement with subcontractor Wen

Ming Lin under which Spring Fashion would outsource its packing work to the latter. (Tr. 112,

218, 249, 264). The parties agreed that the compensation would be based on piecework. (Tr. 53).

Under a similar agreement, Ms. Lin outsourced its trimming work to another subcontractor Yu

Jiao Lin. (Tr. 218, 249).

Spring Fashion started a relationship with these workers. The factory did not provide any

equipment or tools for the packers because they did not need any tools. The factory also did not

provide any tools for the trimming workers except for a small trimming machine. (Tr. 81). The

packing workers worked as a unit and were paid as a unit. (Tr. 53). Wen Ming Lin kept a ledger

that recorded the quantity of the clothing articles completed by the packing workers. (Tr. 72).

When the workers were paid, Wen Min Lin would verify payment amounts based on his records.

*Id*. Then he would accept the payments on behalf of his group and sign a receipt each time. *Id*.

The paychecks would be placed on Wen Ming Lin's desk (Tr. 36, 57). Then Wen Min Lin would

divide the money equally among the packers. (Tr. 53, 54, 57). Apparently there existed an

agreement among the workers for distribution of their compensation. (Tr. 53). As to the

trimming workers, they similarly shared and shared alike. They would also sign a receipt then

divide the money equally among themselves. Yu Jiao Lin maintained the records for the

trimming workers.

2

During plaintiffs' relationship with the factory, Wen Ming Lin requested to change the form of payment a few times. (Tr. 264). The first payment for the workers was made on December 9, 2005. (Tr. 228). Pursuant to the agreement with Wen Ming Lin, the payment check was made payable to Wen Ming Lin and the memo of the check stated "payment for the assigned contractors." (Def. Ex. A; Tr. 228, 264). After the first payment, Wen Ming Lin requested Spring Fashion to issue separate checks for the workers. (Tr. 228). Spring Fashion complied with Wen Ming Lin's request as a courtesy. (Tr. 229). Wen Ming Lin later requested again to change the form of payment and asked Silver Fashion to issue each worker a check in the amount of $300.00. (Tr. 39). The rest of the payments were in cash. (Tr. 264). The amount of work available to the workers varied from time to time, but the workers had been generally receiving substantial income. As Wen Ming Lin testified, he was paid approximately $700 to $800 a week and sometimes over $1,000 a week. (Tr.. 36).

## II.    Defendants did not retaliate against Silver Fashion in any way, shape or form

Plaintiffs have failed to present any credible testimony establishing retaliation or intimidation against Plaintiffs.  On the other hand, Silver Fashion offers a legitimate reason for closing down supported by solid facts and numbers.

### A. Silver Fashion closed down due to a legitimate business reason

The economic downfall throughout the country hit Silver Fashion very hard. Silver Fashion's business had significantly shrunk in 2008. (Tr. 219, 257). The work available for the workers, in turn, had greatly decreased.  (Tr. 224). At most times prior to October 2008, the packers and thread cutters had a significant workload.  Beginning on October 2008 and thereafter, the work diminished requiring plaintiffs to work only about four days a week and several hours a day. (Tr. 84). The change of hours in October is corroborated by the plaintiffs'

own testimony; Wen Ming Lin testified that the hours were already reduced before the lawsuit commenced. (Tr. 62). Plaintiff Yu Jiao Lin also testified under oath that her hours changed in October 2008. (Tr. 82). Moreover, the plaintiffs' admitted in the First Amended Complaint that the plaintiffs' hours changed in October. (see "Exhibit 1") The plaintiffs stated that "from approximately October 1, 2008 through December 16, 2008, Plaintiffs worked three to five days per week." (Pls. Compl. at 6). Silver Fashion's business became substantially worse in November and the packing workers only needed to work two weeks. (Tr. 231). The plaintiffs' income had decreased significantly as Silver Fashion's business waned. Wen Ming Lin, Yu Jiao Lin, and four other workers decided to initiate a lawsuit against the company.

## B. December 16th and December 18th meetings were inquiry based

After Ms. Lin learned about this lawsuit, she was eager to find out which Yu Jiao Lin sued her because there were two workers by the same name of Yu Jiao Lin at Silver Fashion. On December 16, 2008, Ms. Lin called the thread cutter Yu Jiao Lin to the conference room to determine if she was a plaintiff to the action and the basis for commencing the action. (Tr. 88). This short meeting started peacefully and ended peacefully. Ms. Lin never said anything that was threatening or intimidating. *Id*.

On December 18, 2008, Ms. Lin had a meeting with the workers in the factory. (Tr.90). Ms. Lin seldom spoke with any of the workers, however, she would make periodic announcements to keep the employees abreast of important issues. Ms. Lin apprised the workers that she had been sued. She announced that the plaintiffs had started a lawsuit against her and the company. *Id*. As clearly depicted in the video, the workers did not unite against Plaintiff. There is no indication remotely suggesting harassment, retaliation or intimidation. (Defs. Ex. B(1) at

file 2).  The video reveals Defendants making an announcement to the workers in an orderly fashion.  *Id.*

Ms. Lin decided to strictly comply with the law given this lawsuit, she asked the workers whether any of them did not have legal status and those who did not must leave their job. *Id.* Believing that it would be improper to maintain the same payment method requested by Wen Min Ling, Ms. Lin decided to pay what they originally agreed to. Silver Fashion made a check payable to Wen Ming Lin on December 18, 2008, which represented the payment amount for all the packing workers. (Tr. 37). Wen Ming Lin refused to accept the check.

## C.   Silver Fashion closed down permanently as a result of the weakened economy

The packing and trimming units had a sparse amount of work to do on December 18, 2008.  It was the workers' pay day, so the factory did not tell them not to come. (Tr. 39). The packing workers and trimming workers worked several hours on that day and left the factory. (Tr. 92).

Silver Fashion's business had gradually decreased since 2006. (see "Exhibit 2" and "6"). It continued to only worsen in 2007 and 2008. *Id.*  It finally reached the point where it was left with no choice but to close down. (Tr. 257, 258). In fact, Ms. Lin considered closing down the business as early as three months before actually closing.  This decision was reached after Ms. Lin discussed this option with her mother who is one of the owners of Silver Fashion. Ultimately, it was decided that Silver Fashion would close on December 31, 2008. (Tr. 216, 219, 258, 259).

## ARGUMENT

Plaintiffs have failed to make the requisite showing of standing in that they failed to show defendants were their employers and that they have also not established they are employees.

5

Even, *assuming arguendo* that Plaintiffs have satisfied the initial threshold of standing, they still are not entitled to a preliminary injunction.

The second circuit has articulated the standard upon which injunctive relief is available to an aggrieved party. Said party must demonstrate that (1) that it will be irreparably harmed in the absence of an injunction, and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999)

Plaintiffs assert that they have demonstrated a likelihood of success on the merits of their retaliation claim and irreparable harm by way of their inability to afford basic necessities or that defendants' retaliation has caused other workers to be silent who might otherwise seek protections to which they are entitled. Additionally, Plaintiff Yu Jia Lin contends that she continues to suffer from extreme psychological harm as a result of a meeting therefore satisfying the irreparable harm showing. Plaintiffs' arguments, however, are at odds with the relevant facts presented at the evidentiary hearing.

The testimony elicited at the evidentiary hearings underscores Defendants economic hardships that ultimately caused it to close down. (Tr. 219 ) Thus a legitimate business reason existed, which in fact was the dispositve factor behind the closing. Testimony also established that Silver Fashion and Great Wall are two separate and distinct entities, the only common attribute between Silver Fashion and Great Wall is that they operated out of the same building. Great Wall occupied the first and third floors while Silver Fashion occupied part of the 2nd floor. (Tr. 109) Moreover, the distinctions between Silver Fashion and Great Wall are significant enough that no job at the latter corporation is comparable to the job plaintiffs' held at the former

6

corporation. In fact, testimony has established that Great Wall does not employ even one packer,
let alone five. (Tr. 140, 161, 167) Even if the Court were to find a comparable job at Great
Wall, it is in no position to hire additional employees as the corporation is also feeling the pinch
of the economic downturn. In other words, by virtue of adding additional employees to
GreatWall's workforce, Great Wall would be acting against its own interest -which in the worst
case scenario- could cause it to close down leaving plaintiffs in the same position they occupy
now.

In particular, the Court accepted into evidence a chart depicting the packers' collective
salary in the year 2008. (Defendants Exhibit C, Tr. 221) Said chart clearly illustrates the steady
decline in business in that the plaintiff packers' collective salary decreased as the calendar year
progressed. In order for the Court to fully grasp the unfavorable economic circumstances of
Silver Fashion, the Court should view Silver Fashion's collective packer compensation for the
years immediately preceding 2008 to confirm that the economic hardship it suffered was not
isolated to the year 2008, but was in fact progressive. (see "Exhibit "6") Because the packers'
salaries are derived from the number of garments they pack or a piece-work basis, the salary
received by said packers is indicative of Defendants' business condition. Indeed, Defendants
collective compensation was significantly higher in the year 2006 because they were packing a
substantially greater number of garments compared to 2007 and 2008. Clearly, the chart shows a
downward trend in collective compensation paid to plaintiffs. Based on these alarming figures,
it should come to no surprise that Silver Fashion considered closing down as early as October of
2008. (Tr. 174) Defendants saw a steady decline of business throughout the years and its
financial woes were only compounded by the weakening economy. (Tr. 175) In a similar vein,
Silver Fashion also had no intention of re-opening given the poor economic climate. (Tr. 175)

7

### III.    Plaintiffs lack standing to bring this action against defendants

None of the Defendants qualifies as an "employer" or "joint employer" under the FLSA,

notwithstanding the view that the term "employer" has been generally construed broadly.

Similarly, the New York Labor Law parallels the FLSA's interpretation of employer but

plaintiffs again have failed to establish that defendants qualify as an employer.  Further, the

plaintiffs were not employees under the relevant laws. Therefore, the plaintiffs do not have

standing to sue because they are not members of a class that the law is intended to protect.

### A.    Defendants fail to qualify as an "employer" under the FLSA and New York Labor Law

Courts have adopted the "economic reality" test in determining whether one

qualifies as an employer under the FLSA or the New York Labor Law. Under this test, the

factors to consider include whether the alleged employer (1) had the power to hire and fire the

employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment

records, though no single factor is dispositive. Cater v. Dutchess Community College, 735 F.2d 8

(2d Cir 1984); Herman v. RSR Sec. Servs., 172 F.3d 132 (2d Cir 1999); Yang v. ACBL Corp., et

al, 427 F.Supp.2d 327 (S.D.N.Y. 2005). In the present case, none of the defendants qualify as an

"employer" under the FLSA or New York labor law.

Applying the "economic reality" test to the instant case, the Court should easily find that

Silver Fashion, Great Rose, and Spring Fashion do not qualify as "employers."  First of all, the

power to hire and fire the workers was given to the subcontractors Wen Ming Lin and Yu Jiao

Lin. The factory never hired any of the plaintiffs as employees. Instead, Silver Fashion

outsourced the packing and trimming work to Wen Ming Lin and Yu Jiao Lin. The factory did

8

not even care how many workers the subcontractors would employ. (Tr. 249). In addition, Silver Fashion did not "fire" any of the packing workers and trimming workers. The relationship with the subcontractors naturally ended when the factory was forced to close down due to economic hardship.

With respect to the second factor, Defendants exercised no control over the workers. The packing and trimming work was simple and required little supervision. Ms. Lin was the manager of the factory, but she rarely needed to go to the factory to inspect the work. (Tr. 114, 240) Although Fang Zhen went to the factory from time to time to inspect the work of the sewers, she never inspected the work of the plaintiffs. (Tr. 143) Further, quality control can hardly be considered supervision. The defendants also never created a work schedule, as there was no need for a fixed schedule. The security tape, which has been admitted into evidence, indisputably shows that there was indeed no work schedule as the plaintiffs would come and go at will. Based on the amount of work that was available, the plaintiffs themselves decided when they should arrive, depart, and the amount of time for which they were to work. (Tr. 255-256).

As for the third factor, Defendants did not mandate a piecework rate nor payment method for the individual workers. Rather, the pay rate was a result of negotiation between the subcontractors Wen Ming Lin, Yu Jiao Lin and Silver Fashion. As to the method of payment, Ms. Lin complied with Wen Ming Lin's multiple requests for a change in the method of payment as a courtesy. (Tr. 229, 264). Spring Fashion did not decide the payment method.

Finally, the subcontractors, not the defendants, maintained employment records for the workers. Other than the payments records, Spring Fashion, Great Rose and Silver Fashion did not maintain any records. At all relevant times, Wen Ming Lin kept records for the workers. (Tr. 57, 71-72). Before signing the payment receipt, Wen Ming Lin would always verify the payment

9

amount by comparing it to his own records. Wen Ming Lin himself testified that he was "the one who kept the booklets." (Tr. 57). All four factors strongly support the finding that Silver Fashion, Great Rose and Spring Fashion are not "employers" under the FLSA and New York labor law. As such, Plaintiffs have failed to properly bring the action against Silver Fashion and Great Rose.

### B.      Defendant Great Wall Corp. is not a joint employer of Plaintiffs

Great Wall does not qualify as a "joint employer" under the FLSA or New York Labor Law. The plaintiffs have unwarrantedly ensnared Great Wall into this action when it has no relationship whatsoever to the plaintiffs. The plaintiffs argued that Great Wall is a "joint employer." This allegation is patently baseless. From a practical perspective, it is important to note that Great Wall is a garment wholesaler and was a customer of Silver Fashion. Further, Defendant Silver Fashion and Defendant Great Wall maintained completely separate finances including separate corporate bank accounts. (Tr. 162). Defendant Silver Fashion and Defendant Great Wall maintained separate workforces who were paid by the individual Defendant corporations. (Tr. 162-163). Silver Fashion was one among many factories that Great Wall had done business with. (Tr 160, 176). Great Wall had only given approximately three to four percent of the business to Silver Fashion. (Tr. 172-73). Great Wall never employed any of the plaintiffs or paid for their services. (Tr. 162-63) Nor did Great Wall exercise any form of control over the workers. Plaintiffs have made improper claims against Great Wall, without having any proof or facts supporting their position. True, Great Wall was a customer of Silver Fashion and is owned by the husband of the manager of the factory, but it would be absurd to impose the "employer" status on Great Wall based on these facts.

Moreover, as discussed above Silver Fashion and Great Rose do not qualify as employers, thus it follows Great Wall cannot be found to be a "joint employer." Even applying the 6-factor test articulated by the Second Circuit counsels in favor of finding that Great Wall was not a joint employer. In determining whether a defendant is a joint employer, the Second Circuit Court has set forth the following factors:

> (1) whether the putative joint employer's premises and equipment were used for the workers' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which the workers performed a discrete line-job that was integral to the putative employer's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the putative joint employer or their agents supervised the worker's work; and (6) whether the workers worked exclusively or predominantly for the putative joint employer.

Zhang v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003).

It should first be noted that Great Wall did not provide Plaintiffs with its premises or equipment. Plaintiffs attempt to confuse the Court by alleging that Silver Fashion and Great Wall operated in the same space because they were in same building. However, there is no question that these two companies each physically occupied different areas of the building. (Tr. 163, 169, 240). No space was commonly used by the two companies. *Id.* There was even a lease between Great Wall and Silver Fashion whereby Silver Fashion paid $18,000 a month in rent. (Tr. 159-59). In addition, Great Wall never provided Plaintiffs with any equipment. Indeed, Great Wall never owned any manufacturing equipment.

Defendant Silver Fashion could have easily shifted as a unit from one contractor to another, although it elected not to given the relationship it had with Great Wall. Although Silver Fashion's only customer was Great Wall, it chose such arrangement because it's owners were the parents in-law of Great Wall's owner. Additionally, this type of relationship is perfectly

11

consistent with a legitimate subcontracting relationship and hardly enough to make the finding that Great Wall is a joint employer. Moreover, with its years of experience in garment manufacturing, Silver Fashion could have easily expand its client base if it chose to do so.

Defendants did not perform a discreet line-job integral to the putative employers production process. Packing is not an integral part of Silver Fashion's production process; it is actually not part of the production process at all. Silver Fashion's employees completed the integral stages of production process such as sewing. In other words, the clothing articles had been fully processed before they reach the packing workers. In respect to trimming, it is also not an integral part of the process because this duty requires only removal of excess threads on a fully processed garment. Indeed, the factory would not have outsourced its packing and trimming work if the work constituted an integral component of the production.

The fourth factor "whether responsibility under the contracts could pass from one subcontractor to another without material changes" also weighs in favor of determining that Great Wall was not a joint employer. The Supreme Court made a direct observation in Rutherford, that, "even when the boning supervisor abandoned his position and another supervisor took his place, the same employees would continue to do the same work in the same place." Walling v. Rutherford Food Corp., 331 U.S. 722, 67 S.Ct. 1473 (1947) This fact pattern would weigh in favor of finding a joint employer because the Rutherford court observed that when employees are tied to an entity such as the slaughterhouse (putative joint employer) rather than to an ostensible direct employer such as the boning supervisor, this factor weighs in favor of a determination of joint employment. Here, the plaintiff subcontractors could not pass the contract from one subcontractor to another. The clearest example of this is that upon closing of Silver Fashion, the Plaintiffs no longer continued their work. Plaintiffs did not resume work

12

under another entity substituting for Silver Fashion because they are directly tied to Silver Fashion, not Great Wall. Therefore, this factor weighs against the finding of Great Wall as a joint employer.

The fifth factor indisputably favors Great Wall. This factor concerns "the degree to which the putative joint employer or their agents supervised plaintiffs' work." Great Wall never hired, fired, paid, or supervised any of the plaintiffs. (Tr. 162-63) Great Wall simply had nothing to do with the plaintiffs.

The sixth factor asks whether plaintiffs worked exclusively or predominantly for the putative joint employer. This factor also strongly favors Great Wall. The plaintiffs only contracted to provide labor for Silver Fashion. They never worked for Great Wall, let alone working "exclusively or predominantly" for it.

Based on the foregoing analysis, the factors weigh in favor of not finding Great Wall to be a "joint employer." Thus, it also logically follows that there is also no basis to allege Mr. Lin, the owner of Great Wall, to be found individually as a "joint employer."

## C. The individual defendants do not qualify as employers because they did not have operational control.

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts must examine the economic reality of the relationship between the individual defendant and the business. Herman v. RSR Secs. Servs., Ltd., 172 F.3d 132, 139 (2d Cir.1999). In deciding whether an individual is an employer, it must be determined whether, under the pertinent facts and circumstances, the person possessed the power to control a worker(s). *Id*. The same factors of the economic reality test also apply to individual defendants, including whether the defendant has the power to hire and fire the employees, whether he supervises or controls their work schedule and performance,

13

whether he determines compensation and methods of payment and whether he maintains employment records. *Id.* The totality of the circumstances must be considered to determine whether defendant had "operational control." *Id.*

In the case at hand, Fang Zhen did not have "operational control" over the workers and thus does not qualify as an employer. First, Fang Zhen had no power to hire or fire any of the plaintiffs. (Tr. 111). Nor did she supervise or control their work schedule and performance. Fang Zhen sometimes relayed messages to the workers because she speaks Chinese and some English. (Tr. 114) She was only helping Ms. Lin and a Spanish speaking supervisor to communicate with the workers. (Tr. 120) Clearly, such a role of an interpreter is not supervisory in nature. In addition, her job duty was to ensure garments met Great Wall's standards. (Tr. 107, 122) She only "occasionally went downstairs to check the quality of those garments and she only inspected the completed work of the sewing workers. (Tr. 132, 143). She never inspected the work of the plaintiffs. Moreover, Fang Zhen was also not involved in determining compensation and methods of payment. She was merely an employee of Great Wall and had never been a decision maker. Finally, as a quality control person, Fang Zhen did not maintain employment records of any of the plaintiffs. Fang Zhen only earned a weekly salary of $775 and was not even a key employee of Great Wall. (Tr. 141). Therefore, Fang Zhen does not qualify as an employer as she has no "operational control" over the plaintiffs.

Ms. Lin similarly lacked the requisite "operational control" necessary to be found an employer. First, as subcontractors, Wen Ming Lin and Yu Jiao Lin, not Ms. Lin, had the power to hire and fire the remaining plaintiff workers. Second, Ms. Lin did not control the plaintiffs' work schedule as the factory never required the plaintiffs to have a schedule. (Tr. 255-56). She also exercised very little control over the plaintiffs' work performance as the workers knew how

14

to arrange their work. ( Tr. 255). Third, the plaintiffs' compensation and method of payment was the result of negotiation with Wen Ming Lin and Yu Jiao Lin. It was not decided by Ms. Lin. Finally, Ms. Lin never maintained any of the records for the plaintiffs. Therefore, there is no question that Ms. Lin lacked the requisite "operational control" to be found an employer. Indeed, Ms. Lin's involvement with Silver Fashion was very limited and she would only "help out a little bit" when she had time. (Tr. 247). She also never received compensation for her service.

Furthermore, there is no basis to allege that Mr. Lin is an employer of the plaintiffs. Since Great Wall does not qualify as an employer, there is simply no reason to hold Mr. Lin as an employer. Mr. Lin was not involved in the operation of the factory. (Tr. 171). He had never even met or communicated with any of the plaintiffs. (Tr. 180). Thus, Mr. Lin is not an employer because he did not have any control over any of the plaintiffs, let alone meet the standard of "operational control."

## D. Plaintiffs were independent contractors who formed a partnership agreement amongst themselves

The plaintiffs had formed a partnership by virtue of working as a unit and being paid as a unit. (Tr. 53). As such, they should not be deemed employees because the legal definition of "employee" under the FLSA and New York Labor Law does not cover a partnership. The plaintiffs were also independent contractors under the "economic reality" test. Therefore, the plaintiffs are not entitled to the protections of the FLSA and New York Labor Law.

The FLSA defines "employee" as "any *individual* employed by an employer." 29 U.S.C. §203(e)(1). Similarly, New York Labor Law also only provides *individuals* with protection. N.Y. Lab. Law §651(5); 12 NYCRR §142-2.16(a). Here, Plaintiffs are not entitled to protection under the law because they formed a partnership while working for Silver Fashion.

15

New York Partnership Law defines "partnership" as "an association of two or more persons to carry on as co-owners a business for profit." §10(1). It further defines "business" to include every trade, occupation, or profession. Similarly, case law defines a "partnership" as a contract of two or more persons to place their money, effects, labor or skill or some or all of them in lawful commerce or business and to divide the profits and bear the loss in certain proportions. Boyarsky v. Froccaro, 125 Misc.2d 352, 479 N.Y.S.2d 606 (N.Y.Sup.1984); see also Pattison v. Blanchard, 5 N.Y. 186 (1851); Manning v. Whalen, 259 A.D. 490, 20 N.Y.S.2d 364 (NY. App. Div. 1940); Hanlon v. Melfi, 102 Misc.2d 170, 423 N.Y.S.2d 132 (N.Y. Supp. 1979).

In the case at hand, the undisputed facts support the finding that the plaintiffs had formed a partnership. The plaintiff workers formed a partnership. The factory outsourced its packing and trimming work to this partnership. A partner of the group, Wen Ming Lin, negotiated the terms of payment and methods of payment. These workers worked different hours than the employees such as the sewing workers. They performed labor together in exchange for profits. The plaintiffs' positions as packing workers and trimming worker fall into the definition of "business" because "business" includes every occupation. The plaintiffs shared the profits and bore the loss together as a unit. This pattern of arrangement indicates that Plaintiffs were a partnership during their relationship with Silver Fashion and its predecessors.

The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. New York Partnership Law §11(4). These five packers worked as a unit and were paid as a unit. The compensation was based on the unit's total pieces completed by the unit. They divided the profits equally among themselves, regardless how much work each packer had done. This share-and-share-alike arrangement shows that they must have had an

agreement under which each shared the profits and losses. In sharp contrast, no employee would be paid this way. No employee would share his income with other employees.

It is worth noting that the plaintiffs' compensation was based on the total production of the unit. The number of workers that went to work often varied, but even those who did not show up for work still received his portion of payment. This arrangement was probably designed for the mutual benefit of each partner so that they did not have to worry about lack of income when they were on vacation or became sick. These facts strongly indicate that this arrangement was a type of partnership because an employee must work to get paid.

The facts also support the finding that the plaintiffs were independent contractors. As such, the plaintiffs are not entitled to relief because the FLSA and New York Labor Law only protect employees.

**E.     The plaintiffs are independent contractors under the "economic reality" test**

The Court of Appeals for the Second Circuit set out an "economic reality" test to distinguish between employees and independent contractors.  This test considers five factors: (1) the degree of control exercised by the employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. Brock v. Superior Care, Inc., 840 F.2d 1054 (2nd Cir. 1988); United States v. Silk, 331 U.S. 704 (1947).  No one factor is dispositive; rather, the test is based on a totality of the circumstances. FLSA and New York Labor Law embody similar standards with respect to this issue. Lopez v. Silverman, 14 F.Supp.2d 405, 411, (S.D.N.Y. 1998).  As such, a similar analysis of this issue is

required under both the FLSA and New York Labor Law. In the instant case, the totality of the circumstances shows that the plaintiffs are independent contractors rather than employees.

It should first be noted that Spring Fashion, Great Rose and Silver Fashion exercised no control over the workers. To begin with, Spring Fashion, Great Rose and Silver Fashion did not retain the control over hiring and firing the workers. Rather, subcontractors Wen Ming Lin and Yu Jiao Lin recruited and entered into partnership agreement with the remaining plaintiff workers. Wen Ming Lin and Yu Jiao Lin were also responsible for reporting the weekly production. The lack of control is further supported by the fact that there was not a work schedule for the workers. All these facts clearly show that the workers were a self-managed and independent team.

In addition, the second factor of the economic reality test, i.e., opportunity for profit or loss and their investment in the business, supports the finding that the workers are independent contractors. It is worth noting that, unlike Silver Fashion's employees compensation, the plaintiffs' profit or loss was controlled by the plaintiffs themselves. The plaintiffs were paid based on piecework giving them the opportunity to make more or less money depending on the amount of pieces they produced and the number of people they shared the work with. Thus, their income was not dependant on the defendants' business but was largely controlled by themselves. It should also be noted that the factory did not make any investments in equipment or tools for the packing workers because they did not need any tools. Only a small trimming machine was provided for trimming workers.

Moreover, as discussed above, packing and trimming were not integral components of the defendants' business. Important steps of the process had been completed before the clothing articles were passed to the plaintiff workers.

18

Based on the totality of the circumstances, the plaintiffs were independent contractors rather than employees. As such, the plaintiffs are not entitled to relief under the FLSA and New York Labor Law.

### F.   The parties have constitutional right to contract freely and their freedom of contract must be respected.

Notwithstanding that the liberty of contract has been described as an abstract doctrine, it is a constitutional right universally recognized and respected. Interborough Rapid Transit Co. v. Lavin, 247 N.Y. 65, 159 N.E. 863 (1928); Stillwell Theatre v. Kaplan, 140 Misc. 142, 249 N.Y.S. 122 (Sup 1931), aff'd 235 A.D. 738, 255 N.Y.S. 715 (2d Dep't 1932), rev'd on other grounds, 259 N.Y. 405, 182 N.E. 63 (1932). Although the phrase "freedom of contract" does not appear in the Constitution, it is embraced in the meaning of "liberty" as employed in the Due Process Clause. Wright v. Hart, 182 N.Y. 330, 75 N.E. 404 (1905).

Ms. Lin outsourced the packing and trimming work to the plaintiffs pursuant an oral agreement between the parties. The parties agreed that the workers would act as contractor to work at the factory. This agreement is evidenced by the first paycheck to the workers. The memo of the first paycheck stated that "payment for the assigned contractors." Clearly, this is what the parties originally agreed to. The parties' agreement is further evidenced by the plaintiffs' equal pay schedule. The equal pay schedule indicated that the plaintiffs must have agreed to act as contractors because no employees would agree to be paid equally. However, the defendants' contract right has been seriously interfered with. The defendants entered into an agreement to hire the plaintiffs as contractors. The plaintiffs acted in extreme bad faith in filing the instant lawsuit. In good times the plaintiffs pocketed the profits. When the plaintiffs' income decreased as the business slowed down, they claimed they were employees protected by the labor law.

19

The plaintiffs tried to rebut the evidence of the first paycheck by arguing that Wen Ming

Lin cannot read in English. This argument is without merit. Even though Wen Ming Lin does not

know English, he knew he was the boss of the workers when he received one check for the

whole group paid under his name.

Based on the totality of the circumstances, the plaintiffs were independent contractors

rather than employees. As such, the plaintiffs are not entitled to relief under the FLSA and New

York Labor Law.

## IV.   Plaintiffs have failed to demonstrate a likelihood of success on the merits of their retaliation claim

Plaintiffs have not presented evidence sufficient to show a likelihood of success on the

merits of their retaliation claim.  In fact, plaintiffs failed to establish that they are "employees" of

defendants under the FLSA and New York Labor Law.  Defendants testimony is consistent with

finding that the plaintiffs were subcontractors whereas plaintiffs' testimony is replete with

inconsistencies suggesting they fabricated a story so they can bring an action against defendants.[1]

Theses inconsistencies cast serious doubt as to the veracity of plaintiffs' statements.  Moreover,

the alleged retaliation and intimidation carried out by defendants is grossly exaggerated and

overreaching.  Both Fang Zhen and Ms. Lin stated they never threatened or disciplined the

plaintiffs. (Tr. 134, 224-25, 262)

### A.   Defendants have not retaliated against plaintiffs

As a threshold matter, plaintiffs "retaliation" cause of action assumes three things; first,

that defendants engaged in unlawful conduct insofar that it violated FLSA and NY labor laws;

second, plaintiffs filed this lawsuit as a result of defendants violation; and third, defendants

---

[1] The inconsistencies Defendant cites to are found within the Proposed  findings of fact and conclusions of law
section II(D).

20

took adverse action by firing plaintiffs due to plaintiffs filing this lawsuit. Accordingly, if the first assumption is shown to be untrue it will have a chain like reaction in that it will render plaintiffs' retaliation claim moot meaning that defendants purported adverse action of terminating the plaintiffs cannot be deemed to be an act of retaliation. In other words, plaintiffs cannot show that there is a likelihood of success on the merit and we are also left with the inescapable conclusion that defendants act of terminating the plaintiffs is nothing more than a legitimate business decision.

In regards to the above, defendants have determined that they were not in violation of minimum wage laws based on the compensation plaintiffs received from 11/10/08 to 12/24/08. The hourly income was computed by taking the amount paid to plaintiffs divided by the total number of hours worked which yielded an hourly wage of \$20.23. (See Exhibit "2" and "4")[2] In 2008, the department of labor set the minimum hourly wage at \$6.55, therefore defendants are NOT in violation of the FLSA.[3] Similarly, New York State's minimum wage was set at \$7.15 for the year 2008[4], therefore defendants are not in violation of the state laws. Consequently, plaintiffs have failed to demonstrate a likelihood of success on the merits based on the concrete evidence above.

Plaintiffs rely upon Centeno-Bernuy v. Perry, 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003) and Colon v. Coughlin, 58 f.3d 85, 872 (2d Cir. 1995) in establishing retaliation. Plaintiffs reliance is unwarranted given the substantial factual distinctions between the aforesaid cases and the case at bar. In Colon, the defendant employers form of retaliation was extreme, radical and egregious. Defendant employer made insinuations that the plaintiff

---

[2] Said computations have been prepared by Defendant Ms. Lin who has personal knowledge and accurate records of plaintiffs compensation paid for the relevant times mentioned therein. Please see Ms. Lin's attached affidavit as well, Exhibit 2.

[3] http://www.dol.gov/esa/whd/flsa/

[4] http://www.labor.state.ny.us/wagesandhours.shtm

21

employees were "terrorists" and also reported them to INS so they may possibly be deported. This behavior is clearly aimed at the plaintiffs for retaliation purposes.  Similarly, plaintiffs reliance upon Coughlin is unwarranted in that Coughlin stands for the principle that temporal proximity may be considered as circumstantial evidence in determining retaliation. *Id.* at 872. Thus the weight given to temporal proximity should be less than the weight given to direct evidence.  Here, direct evidence has been presented by defendants stating that the firing was not due to plaintiffs filing of the lawsuit, but rather due to the closing of Silver Fashion, a mere fourteen days apart.[5]  Even if the Court finds close temporal proximity between the filing of the lawsuit and termination of plaintiffs, that evidence holds little weight because Silver Fashion ultimately closed down.

Additionally, ample testimony has been elicited from defendant Xiao Yan Lin who has established that Silver Fashion was in a state of economic crisis as it saw its business sharply decline from 2005 to 2008. (Tr. 224; Def Ex. A; Def. Ex. C)  Based on the ailing economic condition of Silver Fashion, defendants were faced with the possibility that they may need to close down.  Ultimately, Silver Fashion closed down on December 31, 2008, the timing of which is close in proximity to the firing of plaintiffs. (Tr. 218)  Plaintiff on the other hand relies substantially on the timing of the firing alone to prove retaliation.  Temporal proximity alone is insufficient to overcome an employer's legitimate, nondiscriminatory reasons for terminating a plaintiff's employment. Simpson v. New York State Dep't of Civil Srvc., 166 Fed.Appx. 499, 502 (2d. Cir.2006).   In fact, Defendant Lin testified that Silver Fashion contemplated closing its business as early as October 2008 due to poor business. (Tr. 174, 219)  The continued decline in business culminated in Defendant Li closing Silver Fashion on December 31, 2008.

---

[5] Defendants served on 12/17/08 and Silver fashion closed on 12/31/08.

(Tr. 218). Thus, plaintiff's termination is clearly attributed to the closure of Silver Fashion; accordingly, Plaintiffs argument is unpersuasive.

Plaintiffs also paint the circumstances and facts of the conversation between defendants Fang Zhen and Xiao Yan Lin and plaintiff Yu Jiao Lin on December 16, 2008 with an extremely broad stroke. It is undisputed that plaintiff Yu Jiao Lin and defendants met and conversed for thirty minutes in respect to the filing of the lawsuit. (Tr. 87-88) The purpose of the meeting was simply to inquire into the basis and reason for such an action. Defendants endeavored to amicably resolve any issues that may have arose between the parties herein, but plaintiff exhibited a distrusting attitude and lack of candor impeding any meaningful discussion. (Tr. 87-88) Plaintiff Yu Jiao Lin in fact testified that the only questions asked related to why a complaint was filed and what wrong actions have defendants done to warrant a lawsuit. (Tr.88)[6] There is no testimony indicating retaliatory action on the part of defendants.

On December 18, 2008, Defendants convened the employees of Silver Fashion to announce the lawsuit against it. During this alleged meeting, plaintiff alleges she was mocked and humiliated because defendants incited the workers against her. This fact is grossly exaggerated as the video plaintiffs rely upon reveals nothing of the sorts. (Def. Ex. B(1) (at file 2 ) The meeting was strictly limited for the purpose of apprising its employees of the recent action and the potential negative implications arising therefrom. There were no acts of intimidation or retaliation.

It is also significant to note that plaintiff Wen Ming Lin testified that he saw a decrease in hours in October 2008, which supports defendants' position that its business began to wane.

---

[6] Q: Did your boss say anything else to you during that meeting? A: Asked why we filed complaint against her? What had she done wrong? What had she done wrong? She implicate that, and then she asked, "What do you think that I had treated you?" Fang Zhen also asked, "Yu Jiao, how did I treat you?" Q: Did the boss or Fang Zhen say anything else to you during that meeting? A: Same kind of thing.

(Tr. 59, 62) The decrease of hours signifies that defendants business was faced with a downturn thereby prompting it to reduce the hours for its workers. It should also be duly noted that during the month of October 2008, defendants were not aware of any action against them, thus it reveals that defendants lacked any reason to decrease the working hours but for the slowdown in business. Additionally, Wen Ming Lin testified that he worked about the same amount of days per week and earned the same amount of money in November 2008 and December 2008 (Tr. 70). As such, the filing of the lawsuit had no impact on the hours worked or money earned by the plaintiffs since both remained the same prior to and after the filing of the lawsuit. Hence, plaintiffs fail to establish a connection between the filing of the lawsuit and the purported retaliation claim.

Moreover, the court accepted into evidence an exhibit depicting the collective salaries paid to the plaintiffs for 2008. (Exhibit C; Tr. 221, 222) As more clearly illustrated on Exhibit "6" annexed hereto, there was steady decline in salary from 2005 to 2008. When considering that the plaintiffs were paid on a piece-work basis, the chart underscores the declining business of Silver Fashion in that it no longer had the volume of business necessary for the plaintiffs to work, thus the decline in salary to the collective packers. Clearly, this evidence corroborates that defendants were not retaliating against the plaintiffs as a result of plaintiffs filing the complaint. The truth of the matter is plaintiffs claim are wholly devoid of merit and defendants act of terminating the plaintiffs were anything but retaliatory in nature. The mere happenstance that plaintiffs were terminated due to a legitimate business reason on a date close to the date of the filing of the lawsuit is simply that, a happenstance. Hence, plaintiff fails to show a causal connection between plaintiffs protected conduct and plaintiffs being terminated from their employment.

24

It is also significant to note that plaintiffs fail to address the fact that twenty-six (26) employees, who are not parties to the instant action, were terminated from their jobs at Silver Fashion since closing down. (Tr 219, 258, 259) If the employees of Silver Fashion retained their positions but plaintiffs as subcontractors were fired, perhaps then would it suggest that they were victims of retaliation; however, this is not the case. These twenty-six (26) employees were not given disparate treatment relative to the plaintiffs. None were promised employment elsewhere. To the contrary, the employees and plaintiff subcontractors were similarly situated, evidenced by the fact that they all were ultimately let go. Indeed, the entire workforce, employees and subcontractors alike, was terminated as a result of Silver Fashion closing down which speaks volumes as to the truthfulness of defendants' testimony regarding the economic downturn and resulting termination of plaintiffs. Therefore, the retaliation claim is unfounded and devoid of merit.

Lastly, despite Defendant Fang Zhen testifying that she showed up for work on January 8, 2009 for the purpose of unpacking and unfolding boxes of garments, Plaintiff takes this testimony wholly out of context. Indeed, Zhen showed up to the premises because she is an employee of Great Wall, which was still in operation on January 8, 2009. (Tr. 124, 125) Defendant Zhen further testified that the employees depicted on the video were employees of Great Wall, not Silver fashion. (Tr. 124) Additional testimony has also been presented refuting Plaintiffs' assertion that "packing" work was done on January 8, 2009; to the contrary, no "packing" was done, only shipping and quality control by Great Wall employees were done for those garments received from China. (Tr. 127) Finally, testimony was also presented establishing that Silver Fashion was closed down evidenced by plaintiff admitting and acknowledging the main entrance to same was gated up. (Tr. 47) Plaintiff further admits that

25

while Silver Fashion was open for business, the employees would gain access to the premises by using the entrance now gated up. (Tr. 47) The closed gate is consistent with Silver Fashion being closed down. Clearly no packing work was done because Silver Fashion had already closed down on December 31, 2008. (Tr. 216, 218, 256)

## V. Plaintiffs failed to demonstrate they are Suffering Irreparable Harm

The second circuit has held that irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *See* Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir.1999); Bell & Howell v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir.1983); *see also,* Brown v. Middaugh, 1998 WL 566791, at 1* (N.D.N.Y. Sept. 3, 1998). Irreparable harm is actual and imminent harm, not remote or speculative, *see* State of New York v. Nuclear Reg. Comm'n, 550 F .2d 745, 755 (2d Cir.1997), and cannot be redressed through a monetary award.

Plaintiffs self-serving assertion that they cannot afford the basic necessities should be taken with a grain of salt considering that during the busy and peak seasons at Silver Fashion, they were working as much as twelve (12) or more hours a day, six or seven days a week. (Tr. 34) Based on these staggering numbers alone, it is without a sliver of doubt that plaintiffs earned enough money to carry them through a period of unemployment. Further, considering that only one month has elapsed since plaintiffs were terminated, they have only been without income for a relatively short period of time, hardly enough time to reasonably deplete all their finances. In fact, plaintiff Wen Ming Lin testified that the only harm he has suffered is economic which the second circuit courts have routinely held does not constitute irreparable harm. (Tr. 69) (*See e.g.,* Jayaraj v. Scappini, 66 F.3d 36, 38-39 (2d. Cir. 1995) (recognizing that temporary loss of income not irreparable harm)(citations omitted). And if Plaintiffs truly depended on each paycheck to

26

afford the basic necessities in life, they would be in no position to reject the check representing the wages of all five packers. (Tr. 40) Another clear instance that contradicts plaintiffs' claim of their inability to afford the basic necessities is the fact that, when Silver Fashion issued the last payment to the plaintiffs, they turned it over to their attorneys rather than depositing it.(Tr. 40) Surely, Plaintiffs are not in a "desperate financial condition" given that were able to reject the check representing the wages of all five packers.

   Although plaintiffs still maintain the position that they are in a "desperate financial condition" and faced with "crippling financial instability," both assertions lack a factual basis demonstrating the precise hardships they are facing. (Tr.19, 20)  Looking back on the January 5, 2009 testimony, Plaintiffs are not hesitant to give false testimony.  Plaintiffs do not assert that they are in jeopardy of being evicted or otherwise unable to maintain a home.  Plaintiffs do not assert that they lack the financial resources to eat, instead, Plaintiffs recite a predictable laundry list of liabilities they owe, but curiously enough, fail to mention whether those liabilities cannot be met as a result of their lost employment. (Tr. 50)  One may only deduce that these assertions are being raised for the purpose of satisfying the indispensable prong of "irreparable harm" and nothing more.  The court should not countenance these conclusory assertions, especially where no testimony expressly addressed whether plaintiffs cannot meet their financial obligations in the context of basic necessities.

   In respect to Plaintiff Yu Jiao Lin's claim of suffering extreme emotional distress, it is important to note that the second circuit remains unsettled as to when emotional distress constitutes irreparable injury. Lore v. City of Syracuse, F.Supp.2d, 2001 WL 263051 (N.D.N.Y. 2001) (See, e.g., Alvarez v. City of New York, 2 F.Supp.2d 509, 514 (S.D.N.Y.1998) (finding that plaintiff's allegations of emotional harm and the need to enforce anti-discrimination laws

could be vindicated by monetary relief and thereby making an injunction unnecessary). The predicate events that Plaintiff Yu Jiao Lin asserts caused her to suffer emotional distress fails to support the finding of emotional distress. Plaintiff Yu Jiao Lin was not attacked, threatened or harmed by defendants or its employees. She was not coerced into doing anything. There are no allegations of outrageous behavior or anything remotely resembling that. At worst she was called "heartless" during a conversation with defendant Zhen and Xiao Yan Lin whereby the defendants questioned her in respect to commencement of this action.

Plaintiff Yu Jiao Lin presented evidence relating to her "emotional distress," testifying that she was "agitated and unable to sleep." (Tr. 101) Similarly, the Lore court was faced with a situation whereby the plaintiff complained of "fear, anxiety, humiliation, indignity and shame" to support his/her claim that the emotional distress he/she suffered constituted irreparable injury. The court ultimately held that "While these injuries are surely serious, plaintiff has not shown that her emotional harm cannot be compensated through a monetary award. For this reason, plaintiff's emotional harm does not require a preliminary injunction." Lore, at 5. Plaintiff similarly fails to show irreparable injury on the basis of emotional distress.

Lastly, the fact that the twenty-six (26) employees at Silver Fashion Inc. were terminated also bears on the determination of whether "irreparable harm" is established in the context of silencing potential employees to either testify or join the action. Firing said twenty-six (26) employees would actually encourage, rather than discourage, them to testify or join the lawsuit. By no longer being an employee of Defendants, there lacks any rational incentive or motivation for these so called "silenced employees" to remain silent or not join the action. If these "silenced employees" also believed they were the victims of retaliation, there stands no reason to preclude them from joining the action or testifying. To the contrary, the "silenced

employees" would have more of a reason to testify or join the action. The twenty-six employees accepted the closing of Silver Fashion as the basis for their termination. As a result, plaintiff fails to show that they are suffering irreparable injury because the purported retaliation cannot cause employees to be silent or unwilling to join the action. It is also significant to note that plaintiffs' reliance upon Centeo-Bernuy is unwarranted. The form of retaliation in Centeo-Bernuy comprised of Defendants accusing the plaintiffs to be terrorists and reporting them to the INS so that they may be deported. Centeno-Bernuy at 136. These aggressive and straight forward acts were retaliatory per se whereas in the present case, plaintiffs termination was justified due to a legitimate business reasons.

## VI. Injunctive relief is not warranted based on plaintiffs failure to satisfy standard for same

Injunctive relief should be sparingly granted given that it "............is an extraordinary remedy that should not be granted as a routine matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir.1990); *see also,* Wallikas v. Harder, 78 F.Supp.2d 36, 39 (N.D.N.Y.1990). Party seeking a preliminary injunction generally must demonstrate that he or she: (a) will suffer irreparable harm in the absence of the requested relief; and, (b) either (1) is likely to succeed on the merits or (2) there are sufficiently serious questions going to the merits and the balance of hardships tips decidedly in the movant's favor. (*See* Latino Officers Ass'n. v. Safir, 170 F.3d 167, 171 (2d Cir.1999) (citations and internal quotation marks omitted)) Since Plaintiffs have failed to satisfy the exacting standard, injunctive relief should be unavailing.

As stated at length in section III, (B), *supra*, plaintiffs have failed to show a likelihood of success on the merits of a retaliation claim. To briefly highlight defendants main arguments, Plaintiffs failed to acknowledge that all of Silver Fashion employees were terminated, Defendants did not pay under minimum wage, thus defendants could not have retaliated because

29

their termination of plaintiffs was not related to the filing of the lawsuit, and of course Silver Fashion has been suffering from poor business as early as October 2008 -two months prior to Silver Fashion ultimately closing down- therefore supporting the finding that a legitimate business reason existed to terminate the plaintiffs.

At this point, the Court need not further analyze the additional prongs necessary to grant an injunction. Even if the court is inclined to delve into further analysis, it is patently clear that plaintiff has failed to show the cornerstone requirement of "irreparable harm." In support of Defendants' position, Plaintiffs have failed to provide explicit details and circumstances relating to their financial condition. They did not state they are in jeopardy or face imminent risk of being deprived of the basis necessities. In a generic fashion, they merely enumerate what liabilities they presently owe.

Plaintiffs' attempt to show irreparable harm based on defendants' purported retaliation which supposedly caused employees to not testify or join the action is also unpersuasive. When considering that all of Silver Fashion's employees were terminated, it gives rise to the conclusion that said employees would now have every reason to testify or join the action rather than be subdued or hesitant. It would defy all logic if said employees would not testify or join the action if they believe they were the victims of retaliation, especially considering that they are already aware of the plaintiffs' instant action.

Further, the record has clearly demonstrated that Great Wall Corp. and Silver Fashion are two distinct and separate entities thereby precluding the finding of a "joint employer." Great Wall Corp. is a wholesaler, dealing exclusively in sales, not manufacturing. No packing work, or work comparable thereto, is performed at its business. In this regard, reinstatement is not a viable remedy for plaintiffs. Plaintiffs additionally allude to "four sewing factories" and

30

companies "affiliated" with Defendant Ping Nen Lin as other viable locations for plaintiffs to be reinstated, however, plaintiffs are not entitled to be reinstated. First off, defendants have presented testimony stating that the sewing factories were mentioned for advertising purposes and never in fact existed. (Tr. 166-67) Secondly, even if Defendant Ping Nen Lin did own other corporations, plaintiffs failed to demonstrate that the defendants in their individual capacity and in their representative capacity of the corporate defendants are "employers" or "joint employers" under the definition of the FLSA and New York Labor laws.

Further, the request for expedited discovery is nothing more than a fishing expedition of the most blatant character imposing unreasonable burdens on the defendants. Direct testimony has established that no such factories are in existence and to allow discovery to confirm this absolutely unnecessary. Moreover, defendants have established that neither Great Wall nor its individual owners, employees or agents are plaintiffs' joint employers. Therefore, plaintiffs fail to show cause as to why expedited discovery should be permitted. Among the factors to be considered in determining an application for expedited discovery are the following:

> (1) irreparable injury, (2) some probability of success on
> the merits, (3) some connection between the expedited discovery and the
> avoidance of the irreparable injury, and (4) some evidence that the injury
> [that] will result without expedited discovery looms greater than the injury
> that the defendant will suffer if the expedited relief is granted.

Gidatex, S.R.L. v. Campaniello Imports, Ltd., 13 F.Supp.2d 417, 420 (S.D.N.Y.1998)

As mentioned extensively above, neither irreparable injury nor probability of success on the merits has been shown. The factors therefore militate against granting expedited discovery. In addition, while courts may strongly favor reinstatement over alternative forms of relief, reinstatement is often not feasible. Specifically, reinstatement may not be feasible where:

> (1)the position to which the plaintiff seeks to be reinstated has
> been changed or eliminated; (2) reinstatement would result in an
> innocent third party losing a job, or (3) the relationship between
> the parties has been severely damaged.

E.E.O.C. v. Century Broadcasting Corp., 957 F.2d 1446, 1462-63 (7th Cir.1992).

In fact the Tenth circuit court has held that "no reinstatement where employer ceased doing business." Sandlin v. Corporate Interiors Inc., 972 F.2d 1212, 1215 (10th Cir.1992). Both parties are aware that Silver Fashion no longer is in business and as a result the packer positions have been eliminated. Further, the relationship between the plaintiffs and defendants has been obviously strained and damaged thus this factor would weigh against reinstatement as well.  In light of this, reinstatement is not the appropriate remedy to be fashioned.

Lastly, plaintiffs have taken proactive steps to ensure compliance not only with labor laws, but also with tax laws and immigration laws based on its attempt to pay plaintiffs with one check representing the payments for the collective group and its decision to terminate employees without proper status in the United States. Plaintiffs request for defendant to issue checks consistent with past practice, in so doing, would subject defendants to additional tax violations. The plaintiffs should not use this Court to advance their claims of purported labor law violations at the expense of subjecting defendants to potential tax or immigration violations. It is defendants paramount concern to ensure that it is fully compliant with any and all relevant laws that impose a duty on defendant.

In sum, plaintiffs have no standing to sue and lied in court, contradicting themselves over and over again, demonstrating they have no credibility. Even assuming they are employees, there was no violation of the minimum wage laws based on the concrete facts above.

32

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the complaint and deny the motion for preliminary junction because Plaintiffs have failed to establish they possess the requisite standing to seek such relief. Even if the Court holds that Plaintiffs have standing, Plaintiffs have failed to make a showing of a likelihood of success on the merits and irreparable harm. Further, as Defendant Silver Fashion has closed as a result of the poor economy and Defendant Great Wall is not a joint employer, plaintiffs cannot be reinstated to their jobs. Lastly, the application for expedited discovery and the request for back-pay to be held in escrow should be denied, and that the Court award Defendants any other relief deemed proper and just.

Dated:  New York, New York
         February 13, 2009

Respectfully Submitted,
Wong, Wong & Associates P.C.

/s/ Raymond Wong
Raymond Wong
150 Broadway, Suite 1588
New York, NY 10038
(T) 212-566-8080
(F) 212-566-8960
Attorneys for Defendants